Filed at ___11:15___ A M
___5/20___, 20 15
BCL
DEPUTY CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

UNITED STATES OF AMERICA

v.

CONAGRA GROCERY PRODUCTS
COMPANY, LLC,

       Defendant.

CRIMINAL ACTION NO. *1:15CR-24(WLS)*

**PLEA AGREEMENT**

It is agreed by the Office of the United States Attorney for the Middle District of Georgia and the Consumer Protection Branch of the Department of Justice (hereinafter "the government" or "the United States"), by and through its undersigned attorneys, and ConAgra Grocery Products Company, LLC (hereinafter "ConAgra Grocery Products" or "Defendant"), and Defendant's undersigned attorneys, as follows:

(1)

Defendant, being fully cognizant of Defendant's rights, agrees to plead guilty to a one-count Information, waiving prosecution by indictment, charging the introduction into interstate commerce of adulterated food, a strict liability misdemeanor, in violation of 21 U.S.C. §§ 331(a), 342(a), and 333(a)(1), arising from Defendant's shipments of peanut butter contaminated with salmonella between October 6, 2006, and February 14, 2007.

Defendant understands that the intent of this Plea Agreement is that the business entity ConAgra Grocery Products, as it exists on May 19, 2015, is the entity that is pleading guilty to the offense charged. Defendant agrees that it is the entity that owns and operates the plant in Sylvester, Georgia, and that it is the only entity within the structure of its corporate parent that

1

produces Peter Pan peanut butter. Should Defendant transfer assets or lines of business to any affiliate, division, or subsidiary within the ConAgra family of companies, Defendant will ensure as part of any such reorganization or transfer that this Plea Agreement, together with all of the obligations that it establishes and any obligations or effects flowing from any judgment in this case, including the effect of 21 U.S.C. § 333(a)(2), shall apply to all such ConAgra-affiliated assignees, successors-in-interest, or transferees.

(2)

The parties agree that this plea agreement is made pursuant to Fed.R.Crim.P. 11(c)(1)(C), and that the following specific sentence is the appropriate disposition of this case. Taking into consideration the factors set forth in 18 U.S.C. §§ 3553(a) and 3572, the agreed-upon sentence is as follows:

A.      Defendant agrees to pay the Court's special assessment in the amount of $125 within five business days of the Court's entry of the judgment and conviction.

B.      Defendant agrees to pay a criminal fine of $8,011,000 to the Clerk of the United States District Court within five business days of the Court's entry of the judgment and conviction.

C.      Defendant agrees to forfeit $3,200,000, which it will pay to the United States Marshals Service, as directed by the U.S. Attorney's Office, within five business days of the Court's entry of the judgment and conviction. Defendant agrees to sign any documentation necessary to accomplish the forfeiture. Defendant agrees to forfeit all interest in these funds and to take whatever steps are necessary to pass clear title of this sum to the United States.

D.      Defendant and the government agree that the fine and forfeiture payments represent a fair and just resolution of all issues associated with loss and fine calculations.

2

E.     Defendant and the government agree that there shall be no corporate probation in view of factors that include, but are not limited to, the absence of known federal Food, Drug, and Cosmetic Act violations by Defendant at its plant in Sylvester, Georgia, in more than eight years since the February 2007 recall discussed below.

(3)

Defendant understands that Defendant is not required to plead guilty, and that Defendant has the right to plead not guilty and to elect to be tried by a jury. Defendant understands that at a jury trial, Defendant would enjoy a presumption of innocence, and that the government would have the burden of proving Defendant's guilt beyond a reasonable doubt. Defendant understands that Defendant would be entitled to confront and to cross-examine the government's proof, and to present witnesses and evidence in Defendant's own behalf. Defendant has discussed these rights with Defendant's attorney. Defendant knowingly and voluntarily waives these rights.

The United States and Defendant understand and agree that the Court will consider its sentence in light of factors including the advisory Federal Sentencing Guidelines, as explained in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005). Defendant knowingly and voluntarily waives any further objections that Defendant may have based on Booker, Apprendi v. New Jersey, 530 U.S. 466 (2000), and their progeny. Defendant agrees that at sentencing the Court may determine any pertinent fact by a preponderance of the evidence and the Court may consider any reliable information, including hearsay. Defendant expressly waives any claim of right to an indictment, trial by jury, and/or proof beyond a reasonable doubt on any factual determinations that pertain to sentencing in this case.

ConAgra Grocery Products understands, agrees, and has had explained to it by counsel that the provisions of law pursuant to which Defendant is pleading guilty provide for the

3

following possible statutory maximum sentence: a fine of $200,000, or twice the gross gain or gross loss, whichever is greater; a special assessment of $125; restitution as ordered by the Court; and a five-year term of Court supervision.

(4)

As an aid to the Court, the United States and Defendant, by and through Defendant's counsel, enter into the following Stipulation of Fact, which the parties agree is true and accurate. Defendant acknowledges that it is responsible for the acts of its agents and employees as set forth below:

A.     During the relevant time period from January 2004 to February 2007, Defendant and its affiliates manufactured Peter Pan branded and private branded peanut butter products at its plant in Sylvester, Georgia (the "Sylvester plant").

B.     During the relevant time period, Defendant maintained a food safety and quality program at the Sylvester plant that included routine testing of finished peanut butter products.

C.     Salmonella is a pathogen that can be transmitted in food and be injurious to human health. Consuming salmonella in food can cause a condition called salmonellosis, an intestinal illness that often results in diarrhea, fever, and abdominal cramps. Severe cases may require hospitalization to treat the associated dehydration. Salmonella infections can sometimes trigger other serious conditions, particularly in young children, the elderly, and those with compromised immune systems.

D.     Salmonella can be found in fertilized soil and on various exposed surfaces involved in the harvesting and processing of agricultural products, including raw peanuts. Prior to the discovery of salmonella contamination of Defendant's peanut butter products in 2007, the

4

food industry generally viewed finished peanut butter products as presenting a low likelihood of such contamination.

E.     Defendant was aware of some risk of salmonella contamination in peanut butter products and routinely tested for salmonella in its finished product. On October 2 and October 29, 2004, Defendant's routine testing at the Sylvester plant revealed the potential presence of salmonella in samples of finished peanut butter. Following its protocols for isolating contaminated product, Defendant took measures to withhold potentially contaminated peanut butter from shipment until subsequent testing could be performed to confirm the presence of the pathogen. After culture confirmation, Defendant followed its protocols and took measures to identify and destroy contaminated peanut butter in its own facilities.

F.     Following the October 2004 incidents, Defendant's employees sought to determine the cause of the salmonella contamination. Potential contributing factors identified by the employees in 2004 and 2005 included an old peanut roaster that employees concluded had not been uniformly heating raw peanuts to the extent necessary to ensure the elimination of salmonella and thus, product safety; a storm-damaged sugar silo and the presence of bees and birds; a leaky roof that allowed moisture into what was designed, for food safety purposes, to be a dry manufacturing plant; and airflow in the plant that could allow contamination of finished peanut butter by moving potential contaminants (such as salmonella) from areas of the plant where raw peanuts were stored to areas where finished product was packaged. Efforts by Defendant to address some of these issues had already occurred or were underway, but not completed, at the time of the 2007 outbreak. Defendant did not fully correct these conditions until after the 2007 outbreak.

G.     Between October 2004 and February 2007, employees charged with running and analyzing finished product tests failed to detect salmonella in peanut butter produced at the Sylvester plant. Defendant was unaware that some employees analyzing the tests did not know how to properly interpret the results.

H.     In February 2007, the Food and Drug Administration ("FDA") and the Centers for Disease Control ("CDC") advised that an ongoing outbreak of salmonella infections throughout the United States could be traced to peanut butter shipped from the Sylvester plant. The CDC identified more than 700 cases of salmonellosis linked to the outbreak with illness onset dates from August 1, 2006. The CDC also estimated that thousands of additional related cases went unreported. The CDC did not identify any deaths related to the outbreak.

I.     After learning in February 2007 about the 2006-2007 salmonella outbreak from the CDC and the FDA, Defendant immediately and voluntarily terminated production in the Sylvester plant on February 14, 2007, and, over the course of the next month, voluntarily recalled all peanut butter manufactured at the plant since January 2004.

J.     Samples from sealed jars of product obtained after the recall was initiated showed that peanut butter made at the Sylvester plant on nine different dates between August 4, 2006, and January 29, 2007, was contaminated with Salmonella Tennessee. Environmental testing conducted after the recall also identified Salmonella Tennessee in at least nine locations throughout the Sylvester plant. In public statements following the recall, company officials hypothesized that moisture entered the production process and "enabled the growth of low levels of dormant salmonella" present in the plant environment from raw peanuts or peanut dust.

K.     As to Count One of the Information, on or about December 7, 2006, in the Middle District of Georgia, Defendant shipped and caused to be shipped from Sylvester, Georgia, to Fort

Worth, Texas, peanut butter that was adulterated, in that it contained salmonella and had been prepared under conditions whereby it may have become contaminated with salmonella.

      L.    Following the 2007 salmonella outbreak, significant upgrades were made to the Sylvester plant to address conditions that could have contributed to the outbreak, and to help to ensure that peanut butter manufactured at the plant would be safe:

        1)    The roof of the Sylvester plant was replaced to eliminate potential leaks and deter moisture from entering the plant;

        2)    The installation of a new peanut roaster, which had begun prior to the outbreak, was completed;

        3)    The plant was modified to prevent airflow from carrying dust from raw product into contact with finished product; and

        4)    New food safety personnel were hired, policies and procedures for the manufacture of peanut butter products were enhanced, microbiological testing procedures at the plant were improved, and new sanitation protocols were instituted.

      M.    Defendant has a demonstrated record of sharing with both competitors and government regulatory agencies scientific data and other information learned about the safe manufacture of peanut butter.

(5)

      In exchange for the undertakings made by the government in entering this plea agreement, ConAgra Grocery Products agrees as follows:

      A.    Defendant voluntarily and expressly waives all rights to appeal or collaterally attack Defendant's conviction, sentence, or any other matter relating to this prosecution, whether

7

such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law. This waiver is not intended to bar the assertion of constitutional claims that the relevant case law holds cannot be waived.

B.      Defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a. Defendant waives any claim under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

C.      Defendant understands that the United States takes no position as to the proper tax treatment of the payment made by Defendant pursuant to this Plea Agreement.

D.      Defendant agrees to waive the statute of limitations, and any other time-related defense, to the charge to which it is agreeing to plead guilty under this plea agreement, provided that the guilty plea is accepted by the Court.

E.      Defendant understands and agrees that, should it withdraw its plea, if its guilty plea is not accepted by the Court for whatever reason, or if its conviction is later vacated for any reason, Defendant will waive, for a period of 90 days thereafter, any statute of limitations defense to a prosecution for any criminal violation related to the conduct described herein for which the statute of limitations had not otherwise expired as of October 6, 2011.

F.      Defendant agrees to continue to follow the food safety and quality policies and practices presently codified in the document titled ConAgra Grocery Products Food Safety

8

and Quality Program for the Manufacture of Peanut Butter in Sylvester, Georgia, which is periodically updated. Defendant shall, at the time of execution of this Plea Agreement and thereafter on each of the first two anniversaries of execution of this Plea Agreement, provide to the United States Attorney for the Middle District of Georgia and the Director of the Consumer Protection Branch of the United States Department of Justice, a written Confirmation ("Confirmation"), signed by a duly authorized ConAgra Grocery Products official, that Defendant has been following the policies and practices contained in the ConAgra Grocery Products Food Safety and Quality Program for the Manufacture of Peanut Butter in Sylvester, Georgia and will continue to do so. Each Confirmation shall include a copy of the current Food Safety and Quality Program document.

(6)

In exchange for the consideration set forth in Paragraph (5) above, the United States agrees that it will accept the plea of guilty by Defendant in full satisfaction of a) all federal criminal charges with respect to the manufacture or introduction into interstate commerce of adulterated peanut butter prior to March 1, 2007, by Defendant or its affiliates, and b) violations of law related to the manufacture of adulterated peanut butter prior to March 1, 2007, by the Defendant or its affiliates that were the subject matter of the investigation by, or based on facts currently known to, the United States Attorney's Office for the Middle District of Georgia, the United States Department of Justice Consumer Protection Branch, and/or the United States Food and Drug Administration.

(7)

Defendant is satisfied with the legal representation provided by its lawyers; Defendant and its lawyers have fully discussed this guilty plea agreement; and Defendant is agreeing to

9

plead guilty because Defendant admits that it is guilty of the misdemeanor described in paragraph 1. ConAgra Grocery Products will acknowledge acceptance of this guilty plea agreement by the signature of its counsel and of an authorized corporate officer. ConAgra Grocery Products shall provide to the government for attachment to this plea agreement a duly authorized corporate resolution, that shall be notarized, authorizing the company to enter a plea of guilty, and authorizing an officer of the company to execute this agreement.

(8)

If acceptable to the Court, the parties agree to waive the presentence investigation and report pursuant to Rule 32(c)(1) of the Federal Rules of Criminal Procedure, and ask that Defendant be sentenced at the time the guilty plea is entered. ConAgra Grocery Products understands the United States and ConAgra Grocery Products will be free to allocute or describe the nature of this offense and the evidence in this case. ConAgra Grocery Products understands the United States and Defendant retain the right, notwithstanding any provision in this Plea Agreement, to inform the Probation Office and the Court of all relevant facts, to address the Court with respect to the nature and seriousness of the offense, to respond to any questions raised by the Court, to correct any inaccuracies or inadequacies in the presentence report, if a report is prepared, and to respond to any statements made to the Court. Defendant willingly stipulates that there is a sufficient factual basis for the Court to accept the plea.

(9)

It is agreed that the parties' guilty plea agreement contains no additional promises, agreements or understandings other than those set forth in this written guilty plea agreement, and that no additional promises, agreements or understandings will be entered into unless in writing and signed by all parties.

10

(10)

## ACCEPTANCE OF PLEA AGREEMENT

Defendant understands and has fully discussed with Defendant's attorney that this agreement shall become effective only upon the Court's acceptance of this agreement and the Court's acceptance of the plea of guilty by the Defendant.

//

//

//

## SIGNATURES FOR THE UNITED STATES

MICHAEL S. BLUME
Director
Consumer Protection Branch
United States Department of Justice

ALAN J. PHELPS
Trial Attorney
Consumer Protection Branch
United States Department of Justice

MICHAEL J. MOORE
United States Attorney
Middle District of Georgia

MICHAEL T. SOLIS
Chief, Criminal Division
Assistant United States Attorney

GRAHAM A. THORPE
Assistant United States Attorney

DATED: __May 19, 2015__

**SIGNATURE FOR CONAGRA GROCERY PRODUCTS COMPANY, LLC**

DATE: May 19, 2015

_____
Leo A. Knowles
President

**SIGNATURES OF CONAGRA GROCERY PRODUCTS COMPANY, LLC'S ATTORNEYS**

DATE: MAr 19, 2015

_____
DOUGLAS A. FELLMAN
JONATHAN L. DIESENHAUS
Hogan Lovells US LLP
Washington, DC

DATE: MAr 19, 2015

_____
JOE D. WHITLEY
Baker, Donelson, Bearman, Caldwell &
Berkowitz P.C.
Atlanta, Georgia

13

Attachment to Plea Agreement

**CONSENT IN LIEU OF MEETING**
**OF THE**
**SOLE MEMBER**
**OF**
**CONAGRA GROCERY PRODUCTS COMPANY, LLC**

The undersigned, being the sole member of **CONAGRA GROCERY PRODUCTS COMPANY, LLC**, a Delaware limited liability company (the "Company"), hereby consents, pursuant to Section 18-302(d) of the Limited Liability Company Act of the State of Delaware and the Company's Operating Agreement, to the adoption hereof and do hereby approve the following resolutions, declaring the same to be in full force and effect as if adopted at a regularly or specially-held meeting of the members of the Company:

**RESOLVED**, that the Company is hereby authorized to enter into a Plea Agreement between the United States of America and the Company, in the form attached hereto as Exhibit A, (the "Plea Agreement") and all transactions contemplated thereby, and that Leo A. Knowles, President, of the Company, is hereby authorized and directed to, in the name and on behalf of the Company, execute and deliver the Plea Agreement substantially in the form attached hereto, with such changes and modifications as Mr. Knowles may approve, such approval to be conclusively evidenced by the execution and delivery of such agreement by him;

**RESOLVED FURTHER**, that any of the officers of the Company are hereby authorized, empowered and directed, in the name and on behalf of the Company, to take any and all actions as may be necessary, appropriate or desirable to effectuate the intent of these resolutions, including causing payments to be made on behalf of the Company in accordance with the Plea Agreement.

Dated May 5th, 2015.

SOLE MEMBER:
CONAGRA GROCERY HOLDINGS, INC.

Colleen Batcheler
Sole Director